**Joan Ann EMORY, individually and on behalf of all similarly situated, Plaintiff,**

v.

**DELTA FUNDING CORPORATION, Defendant.**

No. Civ.A. 1:98–CV–2179–WBH.

United States District Court,
N.D. Georgia,
Atlanta Division.

June 16, 1999.

Howard Daniel Rothbloom, Browning & Tanksley, Marietta, GA, Martin D. Chitwood, Craig Gordon Harley, Nikole M. Davenport, Chitwood & Harley, Atlanta, GA, for Joan Ann Emory, plaintiff.

Alan S. Kaplinsky, phv, Burt M. Rublin, phv, Martin C. Bryce, Jr., phv, Ballard Spahr Andrews & Ingersoll, Philadelphia, PA, W. Seaborn Jones, Marla Michelle Eastwood, Gleaton Persons Egan & Jones, Atlanta, GA, for Delta Funding Corporation, defendant.

## ORDER

HUNT, District Judge.

Before the Court are plaintiff's motion to certify the class [8]; defendant's motion to file a response brief in excess of the page limitation [11]; and plaintiff's motion to file a reply brief in excess of the page limitation [13]. As an initial matter, the Court grants the motions to file briefs of excess pages. Plaintiff Joan Ann Emory alleges that defendant Delta Funding Corporation ("Delta") paid an impermissible referral fee to mortgage brokers in violation of the Real Estate Settlement Procedures Act ("RESPA"). Emory brought this suit individually and on behalf of all similarly situated persons.

## I. BACKGROUND

Delta, a provider of mortgage loans, uses the services of mortgage brokers. The brokers are paid a fee by the mortgagors and work to find them a mortgagee willing to lend the money at desirable terms. Emory hired American South Mortgage ("ASM") to broker a loan for her and at closing paid the broker $3,600 for services associated with her $55,300 loan. According to plaintiff, Delta paid ASM a bonus, known as a yield spread premium, for arranging a mortgage

1. The par rate is the benchmark interest rate or the lowest rate at which the lender is willing to fund the loan without charging discount points.

2. This section provides that "Nothing in this section shall be construed as prohibiting ... the

at a higher interest rate than that day's "par".[1] Emory contends that the $1,106 yield spread premium payment is in fact an illegal referral fee.

## DISCUSSION

■ Before discussing the merits of the class certification issue, the Court takes the opportunity to caution defendant against submitting additional case law to the Court in the form of correspondence. Because correspondence does not appear as an entry on the Court's docket, a party communicating in such a manner creates the potential of the Court overlooking the very material it especially wished to highlight. If a party feels it necessary to alert the Court to new case law or some other matter pertaining to a pending motion, the proper vehicle is to file a motion to supplement.

■ In an effort to prevent unnecessarily high mortgage loan rates and abusive lender practices, Congress enacted RESPA, part of which prohibits kickbacks or referral fees. *See* 12 U.S.C. §§ 2601(a), (b)(2). Referral fees paid to mortgage brokers are subject to RESPA's prohibition against kickbacks. *See id.* § 2607(a). However, payments for goods or services are not considered referral fees and hence are permitted. *See id.* § 2607(c).[2] Emory contends that Delta's payment of $1,106 was an impermissible referral fee. She seeks to represent a state-wide class of plaintiffs who obtained mortgages from Delta where the mortgagee also paid a yield spread premium to a broker.

Class certification is governed by Federal Rule of Civil Procedure 23, which requires that the party seeking certification show that

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the

payment to any person of a bona fide salary or compensation or other payment for goods or facilities actually furnished or for services actually performed." 12 U.S.C. § 2607(c).

representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.Pro. 23(a). In addition, the movant must establish that common issues predominate and that class action litigation is the superior method for fair and efficient adjudication of the dispute. Fed.R.Civ.P. 23(b); *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 2245–46, 138 L.Ed.2d 689 (1997). The question of whether common issues predominate is far more demanding than the Rule 23(a) commonality analysis. *Amchem,* 521 U.S. at 623–25, 117 S.Ct. at 2250. Joining numerous other courts[3] that have denied class certification in yield spread premiums cases, the Court affirms it holding in *Paul v. National City Mortgage Company,* No. 1:98–CV–216–WBH (N.D.Ga. Mar. 11, 1999) and finds that the requisite degree of common issues is lacking among the putative class members. The Eleventh Circuit holds that a yield spread payment is not a *per se* RESPA violation. *See Culpepper v. Inland Mortgage Corp.,* 144 F.3d 717 (11th Cir.1998) *("Culpepper II").* Instead, determining whether a yield spread premium violates RESPA requires a two-step analysis. It must first be determined whether the payment is for a good or service and then, if so, whether the compensation was reasonable. *Cf. Culpepper v. Inland Mortgage Corp.,* 132 F.3d 692, 695–96 (11th Cir.1998) *("Culpepper I").* As the *Culpepper* cases illustrate, such an analysis requires that a court individually address each contract. Thus, class certification is clearly inappropriate where, as here, the many mortgage brokers were under potentially different contracts with Delta and performed potentially different services.

In conclusion, the motions to file briefs of excess page length [11, 13] are GRANTED and plaintiff's motion for class certification [8] is DENIED.

---

**3.** In addition to *Paul,* courts in this Circuit that have denied class certification in yield spread premium cases are: *Dierker v. Cimmarron Mort. Co.,* No. 2:98–CV–30–WCO (N.D.Ga. Jan. 19, 1999); *Latimer v. NF Inv., Inc.,* No. 1:98–CV–220–ODE (N.D.Ga. Jan. 7, 1999); *Taylor v. Flagstar Bank, F.S.B.,* 181 F.R.D. 509 (M.D.Ala. 1998); *Chandler v. Washtenaw Mort. Co.,* No. 94–A–1418–N (M.D.Ala. July 29, 1998); *Briggs v. Countrywide Funding Corp.,* No. 95–D–859–N (M.D.Ala. Sept. 10, 1997); *Dubose v. First Sec. Sav. Bank,* No. 95–D–867–N (M.D.Ala. Sept. 8, 1997); *Barbosa v. Target Mortg. Corp.,* 968 F.Supp. 1548 (S.D.Fla.1997); *Martinez v. Weyerhaeuser Mort. Co.,* No. 94–1610–CIV–RYSKAMP (S.D.Fla. June 25, 1997). Courts in other cir-

cuits have often come to the same conclusion. *See, e.g., Drootman v. First Nationwide Bank,* No. 97–752 PHX TSZ (D.Ariz. Feb. 17, 1999); *Kowslow v. Dime Mort.,* NO. 97–960 (D.N.J. Jan. 4, 1999); *Lanney v. Delta Funding Corp.,* No. 4:98–CV32–AD–A (N.D.Miss. Aug. 4, 1998); *Lowery v. Ameriquest Mort. Co.,* No. 3:98–731–19 (D.S.C. Dec. 16, 1998); *Hamilton v. North Am. Mort. Co.,* No. 98–58–P–H (D.Me. Oct. 5, 1998); *Conomos v. Chase Manhattan Corp.,* No. 97–CIV–0909, 1998 WL 118154 (S.D.N.Y. Mar. 17, 1998); *but see Brancheau v. Residential Mortgage,* 182 F.R.D. 579 (D.Minn.1998); *Mulligan v. Choice Mortgage Corp.,* 1998 WL 544431 (D.N.H. Aug. 11, 1998).